**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-3002-WJM
Bankruptcy Case No. 05-38302-SBB
Adversary Proceeding No. 08-1102-SBB

IN RE:

GARY LEE BRYAN,

Debtor.

JANEL K. BRYAN,
BRAD HUNT, as Trustee of the Bryan Family Trust,

      Appellants,

v.

M. STEPHEN PETERS, as Chapter 7 Trustee, and
ARTHUR CLARK,

      Appellees.

---

## ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

---

      Janel K. Bryan and Brad Hunt (together, "Defendants") appeal the Bankruptcy

Court's refusal to reopen an adversary proceeding in which the Bankruptcy Court

previously awarded judgment to Chapter 7 Trustee M. Stephen Peters ("Peters").  For

the reasons stated below, the Bankruptcy Court's decision is affirmed.

## I.  BACKGROUND & PROCEDURAL HISTORY

### A.    Bankruptcy Court Proceedings

      In 2005, Gary Lee Bryan filed for bankruptcy protection.  *See In re Bryan*, Case

No. 05-38302-SBB (Bankr. D. Colo.).  In 2008, Peters filed an adversary proceeding

against Gary Bryan, Janel Bryan (apparently Gary's wife), Brad Hunt (trustee of the

Bryan Family Trust), Vectra Bank Colorado, and Auto Source, LLC.  (Record on Appeal

("R.") (ECF No. 8), Vol. 1 at 7–8.)[1]  Through various causes of action, Peters sought to

invalidate the Bryan Family Trust and claw back trust property that allegedly belonged

to the bankruptcy estate.  (*Id.* at 12–21.)  Vectra Bank and Auto Source eventually

settled (*id.* at 209–11), leaving only the individual defendants (collectively, "Adversary

Proceeding Defendants").

Following pretrial motion practice, the adversary proceeding went to trial primarily

on the question of whether the Bryan Family Trust was enforceable.  (*Id.* at 142–56.)

The Bankruptcy Court found as a matter of Colorado law that the trust was

unenforceable.  (*Id.* at 143–46.)  In light of this finding, the Bankruptcy Court entered

judgment in favor of Peters on June 4, 2009, granting him possession of certain trust

property.  (*Id.* at 162–63.)

**B.    District Court Appeal**

The Adversary Proceeding Defendants appealed to this Court.  (*Id.* at 165–67.)

On September 30, 2010, the Court (per the Hon. Walker D. Miller) issued its decision.

(*Id.* at 212–30.)  Applying the "clearly erroneous" standard of review, this Court upheld

the Bankruptcy Court's conclusion that the Bryan Family Trust is invalid.  (*Id.* at 227.)

This Court also reversed as to certain other issues that do not appear to have

continuing relevance.  (*Id.* at 227–30.)  The Adversary Proceeding Defendants then

---

[1] Page citations to the Record on Appeal are to the consecutive pagination inserted in the bottom-right corner of each page.  All other ECF page citations are to the page number in the ECF header, which does not always match the page number inserted by the filer's word processing program.

appealed to the Tenth Circuit. (*Id.* at 233.)

### C. *Stern v. Marshall* and the Tenth Circuit Appeal

On June 23, 2011—while the Tenth Circuit appeal was pending—the Supreme Court decided *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The Court in *Stern* held that Article III of the U.S. Constitution prevents a Bankruptcy Court from entering final judgment on a state common law counterclaim that is not resolved as part of ruling on a creditor's proof of claim. *Id.* at 2614–15. The parties never raised *Stern* before the Tenth Circuit. On August 23, 2012— over a year after *Stern*—the Tenth Circuit issued an order and judgment affirming this Court's decision in all respects. *In re Bryan*, 495 F. App'x 884 (10th Cir. 2012).

### D. Subsequent Bankruptcy Court Proceedings

On March 4, 2014, Defendants (*i.e.*, the Adversary Proceeding Defendants minus Gary Bryan) filed a Federal Rule of Civil Procedure 60(b)(4) motion with the Bankruptcy Court,[2] claiming that the June 4, 2009 judgment was void in light of *Stern*. (R., Vol. 1 at 248–51.) The Bankruptcy Court responded the next day with a "Notice of Nonjurisdiction," stating that it did not have jurisdiction to consider Defendants' motion because the case was closed. (*Id.* at 252.)

On March 28, 2014, Defendants filed a Motion to Re-Open Case ("Motion to Re-Open"). (*Id.* at 254–56.) Defendants requested reopening "to facilitate consideration" of the issues raised in their Rule 60(b)(4) motion. (*Id.* at 254.) The Bankruptcy Court held a hearing and then issued an oral ruling denying the Motion to Re-Open. (R.,

---

[2] Rule 60(b)(4) applies in Bankruptcy Court per Federal Rule of Bankruptcy Procedure 9024.

3

Vol. 2 at 27–32.)

The Bankruptcy Court characterized the Motion to Re-Open as "presumably [brought] under Section 350(b) of the Bankruptcy Code[3] and/or Rule 60(b) of the Federal Rules of Civil Procedure and Rule 9024 of the Bankruptcy Rules, although Movant, at least in his submissions failed to cite authority or foundation for its motion or this procedure."  (*Id.* at 27.)  Without specifying which of those two legal bases under which it was analyzing the Motion to Re-Open, the Bankruptcy Court explained that it was denying the motion for six reasons:

1.    failure to serve the motion on certain parties to the adversary proceeding;[4]

2.    "[l]ack of statutory or jurisdictional ground in supporting the motion to reopen";

3.    Defendants' failure "to timely raise the jurisdictional question";

4.    "no cause shown," because the "underlying reasons" lack merit;

5.    *Stern* "is not central and controlling" to the previous judgment; and

6.    "there are no new issues in this case" justifying reopening.

(*Id.* at 28–29.)  Defendants have appealed that ruling to this Court.  (R., Vol. 1 at 280–93.)

_____

[3] *See* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.").

[4] Given this Court's disposition below, it need not analyze this particular reason for denying the Motion to Re-Open.  The Bankruptcy Court here refers to Defendants' failure to serve their Motion on Gary Bryan, Vectra Bank, and Auto Source.  In appellate briefing, Defendants argue that serving the motion on Gary Bryan and Auto Source would have been a pointless exercise since Defendants' counsel is also Gary Bryan's and Auto Source's counsel-of-record.  (ECF No. 11 at 25–26 & n.3.)  As for Vectra Bank, Defendants say it has never participated in the case in any way since settlement.  (*Id.* at 26.)

## II.  STANDARD OF REVIEW

The standard of review in this instance turns on what sort of motion the Bankruptcy Court denied.  Here, the Bankruptcy Court expressed uncertainty about whether Defendants were moving under Rule 60(b)(4) or 11 U.S.C. § 350(b).  A Rule 60(b)(4) denial is reviewed *de novo*.  *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1345 (10th Cir. 2000).  A denial under 11 U.S.C. § 350(b) is reviewed only for abuse of discretion.  *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995).

The Court is not familiar with the underlying action's entire docket, but the docket entries included in the Record on Appeal do not show the uncertainty the Bankruptcy Court perceived.  Defendants explicitly moved under Rule 60(b)(4), but the Bankruptcy Court instead required them to move to reopen the case.  (R., Vol. 1 at 248–52.) Defendants' subsequent Motion to Re-Open did not cite any legal authority for reopening, but the Bankruptcy Court understood that 11 U.S.C. § 350(b) governs that question.  Moreover, Defendants' Motion to Re-Open was specifically intended to permit the Bankruptcy Court to consider Defendants' Rule 60(b)(4) arguments on the merits.  (*Id.* at 254; *see also* R., Vol. 2 at 13 (Defendants' counsel at oral argument referring to Defendants' Rule 60(b)(4) motion as "incorporated" into the Motion to Re-Open).)

This Court need not resolve the procedural complexities raised by this course of proceedings.  In particular, this Court need not resolve whether a party to a bankruptcy proceeding wishing to bring a Rule 60(b)(4) motion must first successfully petition the

Bankruptcy Court to reopen the case under 11 U.S.C. § 350(b).[5]   Even if the

Bankruptcy Court had granted the Motion to Re-Open, it would then have needed to

reach the Rule 60(b)(4) question directly, and it is the Rule 60(b)(4) question that

occupies most of the parties' briefs on appeal.   Moreover, one of the Bankruptcy

Court's reasons for denying relief was that the "underlying reasons" for the Motion to

Re-Open lacked merit.  (R., Vol. 2 at 29.)  Although ambiguous, this seems to be a

reference to the availability of Rule 60(b)(4) relief.

The Court will therefore review the Bankruptcy Court's order as if the Bankruptcy

Court directly denied Rule 60(b)(4) relief.  As noted, such a ruling receives *de novo*

review.  *Gschwind*, 232 F.3d at 1345.  In addition, this Court may affirm the Bankruptcy

Court for any reason supported by the record.  *United States v. Myers (In re Myers)*,

362 F.3d 667, 674 n.7 (10th Cir. 2004).

## III.  ANALYSIS

### A.      Rule 60(b)(4) Challenges to Subject Matter Jurisdiction, Generally

Defendants argue that *Stern* prevents the Bankruptcy Court from entering final

judgment based on a finding that the Bryan Family Trust is invalid as a matter of

Colorado law.[6]  (ECF No. 11 at 18–19.)  Defendants "candidly acknowledge that

considerable time has passed since trial in 2009," and that "[n]o one believed that

---

[5] Nonetheless, such a requirement would raise concerns.  It could allow a Bankruptcy Court to resolve the § 350(b) question through a ruling that is, in effect, a Rule 60(b)(4) denial, but which receives only abuse-of-discretion review rather than the *de novo* review typically due to Rule 60(b)(4) rulings.

[6] Given the disposition below, this Court need not address whether *Stern* would indeed prohibit a final judgment such as that entered by the Bankruptcy Court in this case.

Article III jurisdiction was an issue at that time," but claim that they still have a right to challenge the Bankruptcy Court's subject matter jurisdiction.  (*Id.* at 20–22.)  Peters, of course, opposes this position.  (ECF No. 21 at 14–22.)

The parties' respective arguments reveal a slight tension in the case law surrounding challenges to subject matter jurisdiction.  On the one hand, it is commonly said that "[c]hallenges to subject-matter jurisdiction can of course be raised at any time *prior to final judgment*."  *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004) (emphasis added); *see also Ruggieri v. Gen. Well Serv., Inc.*, 535 F. Supp. 525, 529 n.2 (D. Colo. 1982) ("If . . . a final judgment is entered, then later challenges to subject-matter jurisdiction may be barred.").[7]  On the other hand, Federal Rule of Civil Procedure 60(b)(4) specifically permits a post-judgment attack on "void" judgments— and among the reasons that a judgment may be void is that "the court that rendered it lacked jurisdiction [over] the subject matter."  11 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2862 (3d ed., Apr. 2015 update) ("*Wright & Miller*").  Moreover, the Tenth Circuit has long held that Rule 60(b)(4) motions are not subject to any time limit.  *See United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2002); *Gschwind*, 232 F.3d at 1345–46; *Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir. 1994); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979); *accord* 11 *Wright & Miller* § 2862 ("there is no time limit on an attack on a judgment as void").  Thus, one line of case law appears to cut off subject matter jurisdiction challenges after final judgment, while Rule

_____

[7] In this context, "final judgment" can refer literally to a final, unappealed judgment, and also to a judgment affirmed on appeal with no possibility of further review.  *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 148 (2009) ("the 1986 Orders became final on direct review over two decades ago").

7

60(b)(4) permits subject matter jurisdiction challenges at any time.

The Court believes these two positions may be reconciled by acknowledging that a court may not deny a Rule 60(b)(4) motion simply due to the time elapsed since final judgment.  Nonetheless, as numerous decisions demonstrate, the *fact* of a final judgment still matters a great deal in any Rule 60(b)(4) analysis.

The Supreme Court's decision in *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371 (1940), illustrates this point well.  In *Chicot*, the plaintiff sought to recover on certain bonds that had previously been canceled by a federal district court exercising bankruptcy jurisdiction.  *Id.* at 372–73, 376.  The plaintiff sought to avoid the cancellation decree by arguing that the Supreme Court later declared the statute authorizing the bond cancellation unconstitutional, and the decree was therefore "void." *Id.* at 374–75.  The Supreme Court rejected this argument, holding that the decree was *res judicata* despite its basis on a later-found-unconstitutional statute.  *Id.* at 378.

The Supreme Court began by noting that the plaintiff "had full opportunity to present any objections to the [prior] proceeding . . . [including] as to the validity of the statute under which the proceeding was brought."  *Id.* at 375.  But,

> [a]pparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. . . .  If the general principles governing the defense of res judicata are applicable, these [plaintiffs], having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it.

*Id.*

The Court next addressed the plaintiff's argument "that the District Court was

8

sitting as a court of bankruptcy, with the limited jurisdiction conferred by statute, and that, as the statute was later declared to be invalid, the District Court was without jurisdiction to entertain the proceeding and hence its decree is open to collateral attack." *Id.* at 376.  The Court found this argument "untenable" because "[t]he lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed." *Id.*  They nonetheless have authority "to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act.  Their determinations of such questions, while open to direct review, may not be assailed collaterally." *Id.*

Subsequent decisions have tempered *Chicot*'s "may not be assailed collaterally" language, but not by much.  For example, the *Travelers* case, *supra*, involved certain bankruptcy court orders entered in 1986, arguably in excess of bankruptcy jurisdiction. 557 U.S. at 141–47.  Almost twenty years later, the Second Circuit held (in a separate action) that those 1986 orders indeed exceeded a bankruptcy court's jurisdiction at the time. *Id.* at 147.  The Supreme Court reversed, reasoning that "once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata." *Id.* at 152.

The Court acknowledged, however, that "[t]he rule is not absolute, and we have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack." *Id.* at 153 n.6.  The Court cited two of its own decisions, one allowing collateral attack when sovereign immunity was at stake, and the other allowing collateral attack to a state-court foreclosure judgment entered in violation of a bankruptcy statute. *Id.*  The

9

Court also quoted the Restatement (Second) of Judgments' position, which permits

collateral attacks on subject matter jurisdiction where:

> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Id.* (quoting Restatement (Second) of Judgments § 12 (1980)).  The Court found "no

occasion to address whether we adopt all of these exceptions" because the parties

argued none and the Court could not see how any would apply: "This is not a situation,

for example, in which a bankruptcy court decided to conduct a criminal trial, or to

resolve a custody dispute, matters 'so plainly beyond the court's jurisdiction' that a

different result might be called for."  *Id.*

The Tenth Circuit thoroughly addressed this "plainly beyond the court's

jurisdiction" standard in its *Gschwind* decision, *supra*.  The plaintiff in *Gschwind* was a

Belgian citizen who brought a wrongful death action in Ohio state court against a

Kansas citizen, an Ohio citizen, and a Canadian citizen.  232 F.3d at 1344.  The

defendants then removed to the Southern District of Ohio.  *Id.*  The plaintiff moved to

remand, arguing that the Ohio defendant defeated removal jurisdiction, but the

Southern District of Ohio determined that the Ohio defendant had been fraudulently

joined and therefore denied the motion to remand.  *Id.*  The case was then transferred

to the District of Kansas and conditionally dismissed on *forum non conveniens* grounds.

*Id.*

On the plaintiff appealed to the Tenth Circuit and lost.  *Id.*  She "then petitioned for

rehearing and rehearing en banc, arguing for the first time that the district court lacked

diversity jurisdiction over suits between aliens [*i.e.*, herself and the Canadian citizen]."

*Id.*  The Tenth Circuit denied the petition, and the Supreme Court subsequently denied

the plaintiff's petition for certiorari.  *Id.*  The plaintiff then filed for Rule 60(b)(4) relief in

the district court, again arguing lack of subject matter jurisdiction over suits between

aliens.  *Id.*  The district court denied the motion.  *Id.* at 1345.

On appeal from that denial, the Tenth Circuit acknowledged that certain

authorities supported the plaintiff's jurisdictional argument, but the court nonetheless

affirmed the district court's denial of Rule 60(b)(4) relief.  *Id.* at 1345.  The Tenth Circuit

noted that a judgment is "void for lack of subject matter jurisdiction . . . only where there

is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond

the scope of its authority."  *Id.* at 1346 (citation and internal quotation marks omitted).

Moreover,

> [a] court does not usurp its power when it erroneously
> exercises jurisdiction.  Since federal courts have jurisdiction
> to determine jurisdiction, that is, power to interpret the
> language of the jurisdictional instrument and its application
> to an issue by the court, error in interpreting a statutory grant
> of jurisdiction is not equivalent to acting with total want of
> jurisdiction.  There must be no arguable basis on which the
> court could have rested a finding that it had jurisdiction.

*Id.* (citations and internal quotation marks omitted; alterations incorporated).  Under

those standards, the Tenth Circuit held that the district court's allegedly

> erroneous interpretation of a jurisdictional statute [did] not
> render the underlying judgment void.  Moreover, there was
> at least an arguable basis for jurisdiction because the scope
> of the district court's jurisdiction over a case with foreign
> parties on both sides of an action is far from clear from the
> face of the [relevant] statute.

*Id.* (citations omitted).

## B.      Defendants' Rule 60(b)(4) Challenge

In light of *Gschwind*, Defendants here must show a "plain usurpation of power,"

*i.e.*, "no arguable basis on which the [Bankruptcy Court] could have rested a finding that

it had jurisdiction," and not simply an "error in interpreting a statutory grant of

jurisdiction."  *Id.*  Defendants offer only two arguments in this regard: (1) the Bankruptcy

Court did not make a jurisdictional determination that they could have challenged

earlier; and (2) the Bankruptcy Court's entry of final judgment was indeed a "plain

usurpation of power."  (ECF No. 11 at 27–28; ECF No. 24 at 15–16.)  The Court will

examine each argument in turn.

### 1.      No Previous Jurisdictional Determination

Defendants argue that the Bankruptcy Court previously determined only its

statutory jurisdiction, not its Article III jurisdiction, and so "this issue remains open for

determination at this time."  (ECF No. 11 at 28.)  Defendants are incorrect.  The

Supreme Court held many years ago that "[e]very court in rendering a judgment tacitly,

if not expressly, determines its jurisdiction over the parties and the subject matter."

*Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938).

12

Moreover, "[a] party that has had an *opportunity* to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 716 n.9 (1982) (emphasis added).  Defendants certainly had an opportunity, and it is no excuse that "[n]o one believed that Article III jurisdiction was an issue at that time."  (ECF No. 11 at 18.)  The *Chicot* case, discussed *supra*, likewise involved a jurisdictional issue that no one thought to challenge at the time: "no question of validity was raised and the cause proceeded to decree on *the assumption by all parties and the court itself* that the [jurisdiction-granting] statute was valid."  308 U.S. at 375 (emphasis added).  The judgment remained *res judicata* despite the parties' and the lower court's apparent unawareness that a jurisdictional problem might exist.  *Id.* at 376.  Thus, Defendants may not obtain Rule 60(b)(4) relief by arguing that the precise jurisdictional question at issue was never previously addressed.

> 2.    Plain Usurpation of Power

Defendants also argue that the Bankruptcy Court plainly usurped jurisdictional power when it entered its June 2009 judgment.  (ECF No. 24 at 15–16.)  Defendants make this argument for the first time, however, in their reply brief—as the very last argument in their reply brief, no less.  (*Id.*)  Defendants seem to frame this as a response to Peters's invocation of the *Gschwind* standard (*see* ECF No. 21 at 20), but the *Gschwind* standard is Defendants' burden to satisfy.  *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) ("Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment only if *the movant* can demonstrate justifiable grounds . . . ."

13

(emphasis added)).  It is not something that Defendants could ignore until raised by an

opposing party.  Accordingly, any argument in this regard raised for the first time in a

reply brief is waived.  *See Colo. Rail Passenger Ass'n v. Fed. Transit Admin.*, 843

F. Supp. 2d 1150, 1171 (D. Colo. 2011).

Even if not waived, the Court would reject the argument on its merits.

Defendants' entire argument is as follows:

> In this case, *Stern v. Marshall* disposes of any argument that
> the Bankruptcy Court possessed even an arguable basis for
> exercising subject matter jurisdiction.  In *Stern*, the Supreme
> Court held that an entire category of claims—consisting of all
> claims under state law seeking to augment or enlarge the
> bankruptcy estate—lie outside the jurisdiction of the
> bankruptcy courts.  The Bankruptcy Court in this case
> exercised jurisdiction over just such a claim and ruled on it.
> The Bankruptcy Court did not merely make a minor error in
> the application of its jurisdiction; rather, it intruded upon a
> wide swath of claims which are constitutionally limited to
> Article III courts.

(ECF No. 24 at 15–16 (boldface removed).)  This is not an argument about "arguable

basis," but a reiteration of *Stern*'s holding.  To the extent Defendants mean to say that

*Stern*'s holding was a foregone conclusion, Defendants forget that *Stern* was a 5-to-4

decision.  *See Stern*, 131 S. Ct. at 2621 (dissenting opinion).  This Court is unwilling to

hold that there was no arguable basis in 2009 for a position embraced by four Supreme

Court justices in 2011.

Further, Defendants have not pointed this Court to a single case in which a final

judgment was collaterally voided on account of *Stern*.  Instead, Defendants cite cases

in which lack of jurisdiction was established on direct appeal.  *See In re BP RE, L.P.*,

735 F.3d 279, 281 (5th Cir. 2013); *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751,

14

755 (7th Cir. 2013), *rev'd in part*, 135 S. Ct. 1932 (2015); *Waldman v. Stone*, 698 F.3d 910, 917–18 (6th Cir. 2012).  (*See also* ECF No. 11 at 21–22.)  As already noted, direct appeal differs substantially from collateral attack.  As the Supreme Court explained many years ago:

> It is just as important that there should be a place to end as that there should be a place to begin litigation.  After a party has had his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined.

*Stoll*, 305 U.S. at 172.  Thus, "[t]he past cannot always be erased by a new judicial declaration."  *Chicot*, 308 U.S. at 374.  Defendants have failed to establish that this case presents one of those very rare situations where the past *can* be erased by a new judicial declaration.

## IV.  CONCLUSION

For the reasons stated above, the decision of the Bankruptcy Court is AFFIRMED.

Dated this 5th day of August, 2015.

BY THE COURT:

William J. Martinez
United States District Judge